**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MADELINE FOWLER,**

                **Plaintiff,**　　　　　　**1:07-CV-1197**
　　　　　　　　　　　　　　　　　　　　　　　**(GLS/RFT)**

       **v.**

**KOHL'S DEPARTMENT STORES,**
**INC.,**

               **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| DuCharme, Harp Law Firm<br>10 Maxwell Drive<br>Suite 205<br>Clifton Park, NY 12065 | CHERYL L. SOVERN, ESQ.<br>KIMBERLY A. HARP, ESQ. |
| **FOR THE DEFENDANT:** | |
| Hancock, Estabrook Law Firm<br>1500 AXA Tower 1<br>Syracuse, NY 13221 | LINDSEY H. HAZELTON, ESQ. |
| Office of Steven F. Goldstein<br>One Old Country Road<br>Suite 318<br>Carle Place, NY 11514 | CHRISTOPHER INVIDIATA, ESQ.<br>GINA M. ARNEDOS, ESQ.<br>STEVEN F. GOLDSTEIN, ESQ. |

**Gary L. Sharpe**
**U.S. District Judge**

**DECISION AND ORDER**

### I. Introduction

Plaintiff Madeline Fowler brings this action against her prior employer Kohl's Department Stores, Inc. ("Kohl's"), asserting claims under the Americans with Disabilities Act ("ADA") and the New York Human Rights Law ("NYHRL").  Pending are Kohl's motion for summary judgment and Fowler's motion for partial summary judgment on liability.  For the reasons that follow both motions are denied.

### II. Facts

**A.    Factual Background**

Fowler began working for Kohl's Colonie, New York store in March 16, 2004, as a customer service area supervisor ("CSA supervisor").  (*See* Pl. SMF ¶ 7; Dkt. No. 35:5.)  While working on February 8, 2006, Fowler sustained an injury to her back and left the store early to seek medical attention.  *Id.* at ¶¶ 12-13.  Fowler's physician, Doctor Denise Letteriello, examined Fowler and indicated she could return to work, but provided Fowler with a doctor's note indicating she would be unable to "lift greater than 5 lbs, do repeated bending or work with arms above head (reaching) due to back pain."  *Id.* at ¶¶ 14, 17.  Fowler apparently returned to work the

2

next day and provided the Kohl's store manager, Jean Spiegel, with Doctor Letteriello's note. *Id.* at ¶¶ 15-16. Upon Kohl's request, Doctor Letteriello then filled out a Kohl's health care provider certification form on February 20th which stated that Fowler had a "chronic condition requiring treatment" and that the duration of the condition was "indefinite." *Id.* at ¶¶ 19, 21.

Spiegel concedes the "indefinite" nature of Fowler's restrictions concerned her, as Fowler had a great deal of responsibility as a CSA supervisor. *Id.* at ¶ 23. Kohl's written description of the position's principle duties and responsibilities indicates that a CSA supervisor, among other things:

- Supervises and assists in the accurate and efficient processing of customer's transactions.
- Maintains a high level of presence of the floor to assist [point of sale ("POS")] associates.
- Authorizes voids and other transactions as needed, makes changes and performs cash pick-ups from registers, maintains register supplies ..., maintains cleanliness and organization of the register and service desk areas.
- Performs other duties as assigned which may include but are not limited to: housekeeping and stocking.
- Must have an excellent work attendance record.
- Must be able to operate a hand held scanner, key register transactions, lift and bag merchandise, bend, stoop, reach.
- Should be able to lift 35 pounds.

(See Ex. A. to Fowler Aff.; Dkt. No. 35:2.)

3

Due to her work restrictions, Fowler requested that she be allowed to continue directing floor associates to assist at the front POS registers or, in the alternative, she be allowed to ring on the higher Customer Service POS registers.  (*See* Pl. SMF ¶¶ 28-30; Dkt. No. 35:5.)  Kohl's refused Fowler's requested accommodation, but did allegedly offer to have Fowler ring while seated.  Fowler refused to discuss this option.  *Id.* at ¶ 31.  (*See also* Ex. Q to Sovern Aff. at 90; Dkt. No. 35:15.)

On February 23, 2006, Kohl's informed Fowler that it was not happy with her performance because she was not sufficiently present on the sales floor, and that she would be placed on a written warning if she refused to personally work the front registers.  (*See* Pl. SMF ¶¶ 33-34; Dkt. No. 35:5, *see also* Ex. Q to Sovern Aff. at 85; Dkt. No. 35:15.)  On April 26, 2006, Fowler was written up for poor job performance and was provided with a written counseling.  (*See* Pl. SMF ¶ 62; Dkt. No. 35:5.)  The written counseling indicated Fowler's physical restrictions acted, "in conflict with [Kohl's] best interests and with regard to her job description."  *Id.* at ¶ 63.

On April 28, 2006, Fowler provided Kohls with another medical certification form from Dr. Letteriello.  *Id.* at ¶ 69.  In the form, Dr. Letteriello diagnosed Fowler with spinal stenosis, and indicated that she had to

4

reposition herself every fifteen minutes,[1] and should never stoop, bend, twist, squat, kneel, push, pull, or use stairs or ladders. *Id.* at ¶¶ 70-72. In addition, Fowler was required to walk with a cane, had decreased range of motion in her back and pain which radiated into her left leg. *Id.* As a result of this certification, Kohls believed it was unsafe for Fowler to be in the building doing specific job functions, and that her medical problems restricted her ability to "manage and oversee basically anything on the floor." *Id.* at ¶¶ 73-76.

On May 10, 2006, Fowler was informed that Kohl's "could no longer facilitate [her] restrictions," she was directed to turn in her badge and keys, and she was asked to leave the building. *Id.* at ¶¶ 77-78. Fowler was advised that she could return to her employment with Kohls if she got better and her physician lifted her restrictions. *Id.* at ¶ 80. Kohl's stopped paying Fowler after May 10, 2006. *Id.* at ¶ 98. Subsequently, Fowler contacted Kohl's Human Resources to ask about continuing medical coverage under COBRA and was informed such coverage was available

---

[1] In her deposition Doctor Letteriello stated she "would guess" her prognosis was that Fowler should not have been standing for more than one hour at a time. (See Ex. O to Sovern Aff. at 40; Dkt. No. 35:13.) However, a review of contemporaneous medical records completed by Doctor Letteriello indicates that Fowler was actually directed to change positions every 15 minutes. (See Ex. D to Letteriello Aff.; Dkt. No. 35:4.)

5

only if Fowler filled out medical leave forms. *Id.* at ¶¶ 94-95. However, Fowler refused to fill out the forms as they indicated she had requested leave, instead of having been made to take it. *Id.* at ¶¶ 96-97. On May 28, 2006, Fowler received a letter from Kohls indicating that her failure to complete the medical leave form was, "accepted as [her] voluntary resignation." *Id.* at ¶ 100.

## B.     Procedural Background

At some point Fowler filed a Workers' Compensation claim with the New York Workers' Compensation Board in connection with the injuries she incurred on February 8 ,2006.  (See Def. SMF. ¶ 4; Dkt. No. 34:8.)  On January 16, 2007, the Workers' Compensation Board issued an opinion which found the Fowler "had a moderate partial disability causally related disability for the period from May 10, 2006 to June 15, 2006, ... and a mild to moderate causally related disability for the period subsequent to June 15, 2006."  (See Def. Ex. C; Dkt. No. 34. 5.)  Though the case is apparently still pending, the Workers' Compensation Board has awarded Fowler weekly compensation at varying rates for the period dating back to May 10, 2006 and continuing through to the present.  *Id.*  (*See also* Ex E. to Sovern Aff.; Dkt. No. 40:1.)

6

Fowler also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 5, 2006 alleging Kohl's had discriminated against her on the basis of her disability in violation of the ADA.  (*See* Pl. SMF ¶¶ 102-04; Dkt. No. 35:5.)  On August 27, 2007, the EEOC issued Fowler a right to sue letter upon a finding of reasonable cause to believe the ADA had been violated.  *Id.*  This action was commenced on November 12, 2007, with Fowler asserting claims for discrimination under the ADA (Count One); failure to provide a reasonable accommodation under the ADA (Count Two); retaliation and hostile work environment under the ADA (Count Three); discrimination under the NYHRL (Count Four); and retaliation under the NYHRL (Count Five).  (*See generally* Compl.; Dkt. No. 1.)

Presently before the court are Kohl's motion for summary judgment dismissing this action on grounds that Workers' Compensation is Fowler's exclusive remedy (Dkt. No. 34), and Fowler's motion for summary judgment as to liability on the first, second and fourth counts of her complaint (Dkt. No. 35).

### III. Standard of Review

The standard for the grant of summary judgment is well-established,

and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle,* 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

## IV.  Discussion

### A.  Kohl's Motion for Summary Judgement- Exclusivity of Workers' Compensation

§ 11 of the New York Workers' Compensation Law provides that "[t]he liability of an employer prescribed by the [Worker Compensation Law] shall be exclusive and in place of any other liability whatsoever" to an employee injured on the job.  N.Y. WORKERS' COMP. LAW § 11 (McKinney 2008).  Kohls asserts that this provision bars Fowler's claims because they arise from a work related disability for which Fowler is receiving Workers' Compensation benefits.  Kohl's argument must be rejected.

Initially, the court notes that § 11 of the Workers' Compensation Law is not an automatic bar on either ADA or NYHRL actions.  As to ADA claims, the Supremacy Clause of Article VI of the Constitution dictates that state Workers' Compensation statutes cannot preclude resort to federal discrimination statutes.[2]  *See, e.g., Lopez v. S.B. Thomas, Inc.,* 831 F.2d

---

[2] As Kohl's points out, *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275 (E.D.N.Y. 1999), appears to have held to the contrary, insofar as the court there indicated that the

8

1184, 1190 (2d Cir. 1987) (stating, in the context of a racial discrimination case, "we do not read the workers' compensation law to deny relief under a federal statute[; w]ere state law to erect such a bar, it would clearly run afoul of the Supremacy Clause."); *Ridgeway v. The Metro. Museum of Art*, No. 06 Civ. 5055 SAS, 2007 WL 1098737, at *4 n.64 (S.D.N.Y. Apr. 10, 2007)*; Liss v. Nassau County*, 425 F. Supp. 2d 335, 342-43 (E.D.N.Y. 2006) (stating "[t]he New York State Worker's Compensation [law] does not bar an employee from suing his employer under" the ADA); *Worthington v. City of New Haven*, No. 3:94-CV-609, 1999 WL 958627, at *8 (D. Conn. Oct. 5, 1999).  Regarding the NYHRL, New York's courts have held that § 11 prohibits negligence based claims related to employment related injuries.  *See, e.g., Burlew v. Am. Mut. Ins. Co.*, 63 N.Y.2d 412, 416 (1984).  However, claims arising out of intentional torts or, as here, discrimination, are not barred by the exclusivity provision of § 11.[3]  *See Kondracke v. Blue,*

---

Workers' Compensation Law precluded the plaintiff's failure to accommodate claim.  Nonetheless, this was merely an alternative basis for dismissal- one which the Second Circuit did not even address in affirming the decision.  Thus, in the present instance, the court declines to defer to the Eastern District's alternative holding in *Micari*, and joins the majority of courts which hold that the Workers' Compensation Law does not bar an action under the ADA.

[3]The court does note that a NYHRL retaliation claim must be dismissed where it complains of retaliatory discharge arising from the filing of a Workers' Compensation claim, as the sole remedy for such retaliation arises under the Workers' Compensation Law.  *See* WORKERS' COMP. LAW § 120 (McKinney 2008); *Rice v. Univ. of Rochester Med. Ctr.*, 46 A.D.3d 1421, 1423 (4th Dep't 2007).  Here, however, Fowler's retaliation claims do not allege retaliatory discharge stemming from her Workers' Compensation claims, but rather from her

9

277 A.D.2d 953, 954 (4th Dep't 200); *Grand Union Co. v. Mercado*, 263 A.D.2d 923, 925 (3d Dep't 1999); *see also Graaf v. North Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 323-24 (S.D.N.Y. 1998) (dismissing negligence claim due to exclusivity of workers' compensation, but allowing NYHRL discrimination claim against employer to survive). Thus, the court rejects Kohl's arguments to the extent it contends that the Workers' Compensation Law unequivocally prohibits Fowler's claims under the ADA and NYHRL.

The only other question to be addressed on this issue is whether Fowler should be precluded from asserting claims under the ADA and NYHRL because of disability representations made before the Workers' Compensation Board. Under both New York and federal caselaw, a plaintiff who has received Workers' Compensation benefits upon a representation that she is totally disabled "must proffer a 'sufficient explanation' for why she asserted total disability in the agency proceeding while maintaining that she was a 'qualified individual with a disability' in the ADA and [NYHRL] action." *Ramos-Boyce v. Fordham Univ.*, 419 F. Supp. 2d 469, 473 (S.D.N.Y.2005) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*,

---

request for an accommodation. (*See* Compl. at ¶ 129; Dkt. No. 1.) Thus this case is distinguishable from *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 239-31 (E.D.N.Y. 1993), wherein the court dismissed a plaintiff's retaliatory discharge claim because it stemmed from his filing of a Workers' Compensation claim.

10

526 U.S. 795, 806 (1999)); *see also Bohen v. Potter*, No. 04-CV-1039S, 2009 WL 791356, at *9 (W.D.N.Y. Mar. 23, 2009); *Sherman v. Kang*, 275 A.D.2d 1016 (4th Dep't 2000).  Here, however, there is no evidence that Fowler ever asserted total disability in conjunction with her Workers' Compensation claim.  Further, the Workers' Compensation Board has only awarded her partial benefits based on a mild to moderate and moderate disability.  As such, there is no inconsistency in the disability assertions made before this Court and the Workers' Compensation Board.  Nor do the Board's disability findings necessarily preclude a finding in this forum that Fowler is able to perform the essential functions of her job with or without an accommodation.  Accordingly, as the New York Workers' Compensation Law and findings of the Workers' Compensation Board do not bar Fowlers' claims under either the ADA or the NYHRL, the court denies Kohl's motion for summary judgment.

## B. Fowler's Motion for Summary Judgment- Liability under the ADA and NYHRL

Next, the court addresses Fowler's contention that she should be granted summary judgment as to liability on her disability discrimination claims under the ADA and NYHRL (Counts One and Four), and her failure

11

to accommodate claim under the ADA (Count Two).

In order to state a prima facie case of disability discrimination under the NYHRL and ADA, Fowler must establish that: (1) Kohl's is covered by the relevant statute, (2) she is disabled within the meaning of the statute, (3) she is able to perform the essential functions of her position with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *See, e.g., Brady v. Walmart*, 531 F.3d 127, 134 (2d Cir. 2008); *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 627 (S.D.N.Y. 2007). Similarly, to state a claim for failure to provide a reasonable accommodation under the ADA,[4] Fowler must establish that (1) she is an individual with a disability as defined by the ADA, (2) Kohl's had notice of her disability, (3) she could perform the essential functions of her job with reasonable accommodation, and (4) Kohl's failed to make such accommodations. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001); *Picinich v. United Parcel Serv.*, 321 F. Supp. 2d 485 (N.D.N.Y. 2004). In the present instance there appears to be no dispute that Fowler has satisfied all these

---

[4]While the parties address Fowler's failure to accommodate claim under both the ADA and the NYHRL, the court notes that the complaint states this claim solely under the ADA.

elements save two- ability to perform essential job functions and adverse employment action.[5]  Finding the issue of Fowler's ability to perform her essential job functions dispositive, the court declines to address the adverse action element of the discrimination claims.

In order to establish a disability based claim under the ADA or the NYHRL, a plaintiff bears the burden of showing "that [s]he is able to perform[] the job's essential functions, alone or with a suggested[, reasonable] accommodation" for her disability.  *Shannon v. Verizon N.Y., Inc.*, 519 F. Supp. 2d 304, 308, 310-11 (N.D.N.Y. 2007).  An accommodation is reasonable "if its costs [and burdens on the employer] are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  The accommodation must allow the employee to perform the essential functions of her job at the same level as the rest of the workforce.  *Id.* at 138 n.3. "[A]n employer is not required to accommodate an individual with a disability by eliminating essential functions of the job."  *Id.* at 140.

"[T]he identification of the essential functions of a job requires a fact-

---

[5]In connection with the failure to accommodate claim, Kohl's also argues that it was not required to fashion a new job for Fowler or reassign her to a different position.  As Fowler has not argued that Kohl's is liable for failing to provide either form of accommodation, the court need not address this argument.

13

specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *Id.* The EEOC has indicated that "[a] job function may be considered essential" because:

> (i) ... the reason the position exists is to perform that function;
>
> (ii) [there are] a limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) ... the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2). Probative evidence in making this determination includes:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; [and]
>
> (iii) The amount of time spent on the job performing the function.

*Id.* at § 1630.2(n)(3). "A court must give considerable deference to an employer's judgment regarding what functions are essential." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) (internal citations and quotation marks omitted). "But ultimately, the question whether a task constitutes an essential function depends on the

14

totality of the circumstances." *Id.* at 120-21.

In light of the foregoing principles, the court finds that Fowler's motion for summary judgment fails because of disputes as to the essential functions of a CSA supervisor, and Fowler's ability to perform such functions with or without an accommodation. Fowler contends that ringing on cash registers - the job function she apparently perceives to be at issue here - was not an essential aspect of her position, as such tasks are normally delegated to other employees. However, this assertion is countered by Spiegel's testimony indicating that supervisors are expected to lead by example, which includes ringing on a cash register frequently- sometimes for more than an hour and multiple times a day. (*See* Ex. Q to Sovern Aff. at 24-29, 91; Dkt. No. 35:15.) Fowler further asserts that, even if ringing up customers was an essential job function, her request to ring on the higher customer service registers was a reasonable accommodation which would have allowed her to perform this task because it required less bending and lifting. However, Spiegel has testified that the bending and standing required at the customer service registers was the same as at the front registers, and that the lifting was actually more difficult due to the higher counter. *Id.* at 87-88. As such, there is clearly a question of fact as

15

to whether running a cash register was an essential task for a CSA supervisor, and whether allowing Fowler to ring on the customer service registers was an accommodation which would have plausibly allowed her to perform this function.

In any event, the court notes that job functions beyond cashiering are at issue here. As described in the recitation of the facts, a CSA supervisor's principle responsibilities and duties are wide ranging. (See Ex. A. to Fowler Aff.; Dkt. No. 35:2.) There is evidence that these responsibilities and duties involve bending, reaching, stooping, being a presence on the sale floor and being able to carry up to 35 pounds. *Id*. Spiegel testified that all of these tasks were "equally important" and "mandatory." (*See* Ex. Q to Sovern Aff. at 24; Dkt. No. 35:15.) However, Dr. Letteriello and Fowler's medical records indicate that Fowler's disability precluded her from performing virtually all of these tasks. (*See* Exs. A-E to Letteriello Aff.; Dkt. No. 35:4, Ex. O to Sovern Aff. at 35-38, 43-46, 78, 80; Dkt. No. 35:13.) Further, Fowler has offered no accommodation by which she could perform these functions despite her disability. Accordingly, there are clearly outstanding issues of fact and credibility regarding the essential functions of Fowler's job and her ability to perform them with or without a

...

reasonable accommodation. Thus, Fowler's motion for summary judgment is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Kohl's motion for summary judgment (Dkt. No. 34) is **DENIED**; and it is further

**ORDERED** that Fowler's motion for summary judgment (Dkt. No. 35) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court provide copies of this Order to the parties by regular mail.

**IT IS SO ORDERED.**

Albany, New York
Dated: July 15, 2009

_____
United States District Court Judge